1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

| | |
|---|---|
| PAMLAB, L.L.C., METABOLITE LABORATORIES, INC., and BRECKENRIDGE PHARMACEUTICAL, INC., | CASE NO. C12-98MJP |
| Plaintiffs, | ORDER DISMISSING DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT |
| v. | |
| VIVA PHARMACEUTICAL, INC., | |
| Defendant. | |

11

12

13

14

15

16

17

This matter comes before the Court on Plaintiffs' motion to dismiss the inequitable

18

conduct counterclaim brought by Defendant Viva Pharmaceutical, Inc. (Dkt. No. 20.) Having

19

reviewed the motion, Defendant's opposition (Dkt. No. 21), Plaintiffs' reply (Dkt. No. 22), and

20

all related filings, the Court GRANTS Plaintiffs' motion and DISMISSES Defendant's

21

counterclaim for inequitable conduct.

22

23

24

1                                    **Background**

2          Plaintiffs Pamlab L.L.C., Metabolite Laboratories, Inc., and Breckenridge

3  Pharmaceutical, Inc., file a motion to dismiss the counterclaim brought by Defendant Viva

4  Pharmaceutical, Inc., pursuant to Federal Rules 12(b)(6) and 9(b). (Dkt. No. 20 at 4.) The

5  counterclaim at issue seeks a declaratory judgment of patent unenforceability based on alleged

6  inequitable conduct before the U.S. Patent and Trademark Office ("PTO") related to the

7  prosecution of U.S. Patent 6,528,496 ("the '496 Patent"), the single patent at issue in this

8  lawsuit. (Id.)

9          The counterclaim here is unique because, rather than being based on Defendant's own

10  investigation, Defendant simply copies the factual allegations contained in a separate lawsuit

11  between two of the current Plaintiffs. (Id.) That suit, a 2006 Florida district court case between

12  Breckenridge and Metabolite, settled following a claim construction ruling by the court, and

13  Breckenridge eventually became a sublicensee of the '496 Patent. Breckenridge Pharm., Inc. v.

14  Metabolite Labs., Inc., Case No. C04-80090-JIC, Dkt. No. 174-1 (S.D. Fla. Dec. 1, 2006.); (Dkt.

15  No. 20 at 4).

16          The patent at issue in this case covers various combinations of vitamins B6, B12, and

17  folic acid in order to treat hyperhomocysteinemia, a risk factor for arteriosclerosis and coronary

18  heart diseases. (Dkt. No. 1 at 3.) The '496 Patent was obtained in 2003 by two hematology

19  professors at the University of Colorado School of Medicine, Dr. Robert H. Allen and Dr. Sally

20  P. Stabler. (Id. at 4.) Dr. Allen formed Plaintiff Metabolite under the University of Colorado's

21  guidelines, and the '496 Patent was assigned to Metabolite. (Id.) In 2000, Metabolite granted

22  Pamlab an exclusive license to certain formulations under several related patents and

23  applications, one of which, through a continuation application, issued as the '496 Patent. (Id.)

24

ORDER DISMISSING DEFENDANT'S
COUNTERCLAIM FOR INEQUITABLE
CONDUCT- 2

1    Pursuant to the license, Pamlab manufactures and sells a product called "Foltx," which contains

2    three active ingredients: 2 mg of vitamin B12, 25 mg of vitamin B6, and 2.5 mg of folic acid. (Id.

3    at 5.) Plaintiffs allege that the '496 Patent is infringed by Defendant's folic acid product, which

4    contains the same compounds as the Pamlab product. (Id. at 6.)

5          Defendant's counterclaim for inequitable conduct alleges that inventors Stabler and Allen

6    "were knowledgeable about all the prior art in their field and had express knowledge of material

7    prior art, which was not disclosed to the PTO and which, if such art had been disclosed, would

8    have resulted in the continued rejection of the patent applications . . . ." (Dkt. No. 8 at 15-16.)

9    Defendant alleges that Plaintiffs' patents "are unenforceable because of [Plaintiffs'] intentional

10   omissions and/or misrepresentations made to the Patent Office and which were materially related

11   to the claims ultimately patented in the Patents." (Id. at 39.) Defendant concludes that, but for

12   these intentional omissions and/or misrepresentations, the Patent Examiner would not have

13   allowed the invention claimed in the applications that ultimately issued as the '496 Patent. (Id. at

14   39-40.)

15                                          **Discussion**

16     A.  Legal Standard

17          When deciding a motion to dismiss under Federal Rule 12(b)(6), the Court must accept

18   all factual allegations in the complaint as true and draw all reasonable inferences in the non-

19   moving party's favor. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

20   Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter,

21   accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

22   662 (2009).

23          A claim for inequitable conduct is reviewed under Federal Rule 9(b). Exergen Corp. v.

24   Wal-Mart Stores, Inc., 575 F.3d 1312 (Fed. Cir. 2009). Rule 9(b) requires that, in alleging fraud,

1   a party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b).

2   "[T]o plead the circumstances of inequitable conduct with the requisite particularity under Rule

3   9(b), the pleading must identify the specific who, what, when, where, and how of the material

4   misrepresentations or omissions committed before the PTO." Exergen, 575 F.3d at 1329. Rule

5   9(b) states that "[m]alice, intent, knowledge, and other conditions of the mind of a person may be

6   averred generally." Fed. R. Civ. P. 9(b). The relevant conditions of mind for inequitable conduct

7   include: (1) knowledge of the withheld material information or of the falsity of the material

8   misrepresentation, and (2) specific intent to deceive the PTO." Exergen, 575 F.3d at 1327.

9        For the "who" in an inequitable conduct claim, the pleading must name specific

10  individuals associated with the filing or prosecution of the application issuing as the patent who

11  both knew of the material information and deliberately withheld or misrepresented it. Id. at 1330.

12  For the "what and where," the pleading must identify which claims, and which limitations in

13  those claims, that the withheld references are relevant to, and where in those references the

14  material information is found. Id. For "why and how," the pleading must identify the particular

15  claim limitations, or combinations of claim limitations, that are supposedly absent from the

16  information of record. Id.

17       Inequitable conduct is an equitable defense to patent infringement that, if proved, bars

18  enforcement of a patent. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285

19  (Fed. Cir. 2011) (en banc). To prevail on the defense of inequitable conduct, the accused

20  infringer must prove that the applicant misrepresented or omitted material information with the

21  specific intent to deceive the PTO. Id. at 1287.  "In other words, the accused infringer must

22  prove by clear and convincing evidence that the applicant knew of the reference, knew that it

23  was material, and made a deliberate decision to withhold it." Id.

24

ORDER DISMISSING DEFENDANT'S
COUNTERCLAIM FOR INEQUITABLE
CONDUCT- 4

1     Intent and materiality are separate requirements. Id. "Proving that the applicant knew of a

2  reference, should have known of its materiality, and decided not to submit it to the PTO does not

3  prove specific intent to deceive." Id. A court may infer intent from indirect and circumstantial

4  evidence, but "the specific intent to deceive must be the single most reasonable inference able to

5  be drawn from the evidence." Id. (internal citations omitted). "[I]n assessing the materiality of a

6  withheld reference, the court must determine whether the PTO would have allowed the claim if it

7  had been aware of the undisclosed reference." Id. at 1291.

8     B.  <u>Intent and Materiality</u>

9     Defendant's counterclaim for inequitable conduct fails to meet the heightened pleading

10  requirements articulated by the Federal Circuit in <u>Therasense</u> and <u>Exergen</u>. 649 F.3d at 1285;

11  575 F.3d at 1329-30. All eleven examples of misrepresentations or omissions offered by

12  Defendant either lack sufficient specificity or are not plausibly alleged to be material.

13  Defendant's counterclaim for inequitable conduct therefore fails.

14     1.  <u>Multi-Vitamin Prior Art and PDR References</u>

15     In paragraphs 46-62 of the counterclaim, Defendant points to certain entries in the

16  Physician's Desk Reference ("PDR") for the years 1981, 1982, and 1990, alleging that these

17  references disclose "many examples of multiple vitamins containing all three vitamins" relevant

18  to the '496 Patent. (Dkt. No. 8 at 17.) But Defendant offers no facts showing that Allen, Stabler,

19  or anyone else actually knew of this specific information. (Id.) "[O]ne cannot assume that an

20  individual, who generally knew that a reference existed, also knew of the specific material

21  information contained in that reference." <u>Exergen</u>, 575 F.3d 1312 at 1330.

22     In paragraph 62 of the counterclaim, Defendant asserts that "[t]he above identified

23  products were known to the Inventors, including Robert Allen, individually and/or Attorney

24  Beaton before December 1991, in light of the fact that they were listed in a publication

ORDER DISMISSING DEFENDANT'S
COUNTERCLAIM FOR INEQUITABLE
CONDUCT- 5

1   referenced by inventors Stabler and Allen." (Dkt. No. 8 at 18.) However, the deposition

2   testimony that Defendant points out does not show that Stabler or Allen had any direct

3   knowledge of the products. (Dkt. No. 8-3 at 31-32.) Instead, the referenced deposition testimony

4   of Dr. Allen simply contains an acknowledgement that Allen had read many articles about

5   vitamin B12 and that he "knew that literature very well." (Id.) This does not show he had

6   knowledge of any specific products, nor that he intended to deceive the PTO. This allegation is

7   therefore insufficient to support a claim of inequitable conduct.

8       2.  Berlin Articles

9       Defendant next alleges that the inventors failed to disclose two articles authored by

10  Berlin, et al., in 1968 and 1978 ("Berlin 1" and "Berlin 2"), that discuss the use of vitamin B12.

11  (Dkt. No. 8 at 19.) However, Defendant never alleges that the inventors had actual knowledge of

12  the information in these articles. The closest that Defendant comes to alleging specific

13  knowledge is stating that Allen possesses a book containing the Berlin 2 article. (Dkt. No. 8 at

14  20.) However, mere possession is insufficient to show that Allen read the specific article in

15  question or that he intentionally withheld it from the PTO. Therasense, 649 F.3d at 1290.

16      Defendant also alleges that Stabler and Allen knew about the Berlin articles because they

17  referenced them in journal articles they published in 1997 and 2002. (Dkt. No. 8 at 30-32.)

18  However, even if the Court were assume that referencing an article equates to having intimate

19  knowledge of the article's contents, this does not prove intent to deceive. "Proving that the

20  applicant knew of a reference, should have known of its materiality, and decided not to submit it

21  to the PTO does not prove specific intent to deceive." Therasense, 649 F.3d at 1290.

22      Finally, Defendant fails to show that the Berlin articles are material to the '496 Patent.

23  Both articles discuss uses of vitamin B12, but the '496 Patent teaches the combination of three

24  different compounds, not just one. (Dkt. No. 20 at 10.) Defendant makes no showing that, but-for

ORDER DISMISSING DEFENDANT'S
COUNTERCLAIM FOR INEQUITABLE
CONDUCT- 6

the withholding of the Berlin articles, the '496 Patent would not have been granted. This

allegation is therefore insufficient to support a claim of inequitable conduct.

3.   <u>Allen Articles</u>

Defendant next alleges that the inventors failed to disclose articles co-authored or

authored by inventor Allen in 1978, 1982, and 1991. (Dkt. No. 8 at 21-22.) The 1978 article, lead

authored by Fred Kolhous, et al., and co-authored by Allen, discusses serum levels of vitamin

B12. (<u>Id.</u>) The 1982 article, lead authored by Allen, discusses the use of oral vitamin B12 and

folate. (<u>Id.</u> at 22.) The 1991 article, lead authored by Frank A. Lederle, and co-authored by

Allen, discusses the use of oral vitamin B12 therapies in the United States. (<u>Id.</u> at 22-23.) While

these articles cover subject matter related to the '496 Patent, Defendant fails to provide specific

facts that establish the "what, when, where, and how" of any alleged material misrepresentations

that Allen committed before the PTO. <u>Exergen</u>, 575 F.3d at 1329.

Regarding the 1978 article, Defendant provides no facts showing how the level of

vitamin B12 levels in serum is material to claim 1 of the '496 Patent for an oral formulation with

both vitamin B12 and folic acid. Regarding the 1982 and 1991 articles, Defendant provides no

facts showing how these articles are material to any claim of the '496 Patent. With regard to all

three articles, Defendant offers no facts that support the conclusion that Allen had the specific

intent to withhold information from the PTO. <u>Therasense</u>, 649 F.3d at 1285. These allegations

therefore fail.

4.   <u>Jansen Patent</u>

Defendant next alleges that Plaintiffs made misrepresentations about United States Patent

No. 4,945,083 (the '083 Patent), issued to Dr. Christian Jansen, Jr. (Dkt. No. 8 at 24.) Although

the inventors disclosed the '083 Patent to the PTO, Defendant alleges that the inventors and their

attorney represented to the PTO that the upper limit of vitamin B12 taught by the '083 Patent

1   was only 1.0 mg, when in fact the '083 Patent encompasses levels of 2.0 mg and higher. (Dkt.

2   No. 8 at 24.) Defendant also alleges that the inventors and their attorney "represented that no one

3   else had ever before contemplated combining all three vitamins together in one formulation,

4   which is false and a material misrepresentation of fact because such combination and/or use was

5   known and had been available for use in the prior art . . . ." (Id. at 25.)

6       While these allegations may have sufficed before Exergen and Therasense, they are

7   insufficient under current Federal Circuit law. Defendant fails to allege who specifically made

8   these representations, when they were made, or how any representations were material. (Dkt. No.

9   20 at 12); Exergen, 575 F.3d at 1329.  "Pleading on 'information and belief' is permitted under

10  Rule 9(b) when essential information lies uniquely within another party's control, but only if the

11  pleading sets forth the specific facts upon which the belief is reasonably based." 575 F.3d at

12  1330. Defendant fails to plead any specific facts that form a reasonable basis for these

13  allegations.  They are therefore insufficient to support a claim for inequitable conduct.

14      5.  Allen's Prior Art

15      Defendant next alleges that two articles authored by Allen "clearly taught the

16  combination of B12 and folate" and that "[m]isrepresentations to the contrary were clearly

17  material and erroneous particularly in light of the fact that such art and information was not

18  disclosed to the Patent Office." (Dkt. No. 8 at 28.) These articles—a 1982 article in the Journal

19  of Clinical Investigation and a 1983 article in the journal Obstetrics & Gynecology—discuss the

20  properties of commercially available products containing vitamin B12 and folate. (Id.) However,

21  Defendant offers no facts suggesting that Allen had any deliberate intent to deceive the PTO by

22  not disclosing these articles. (Id.); 575 F.3d at 1329. In fact, Plaintiffs offer a reasonable

23  explanation for why these articles were not disclosed to the PTO: the products studied by the

24  articles contained tiny amounts of vitamin B12, less than one percent of the amount of vitamin

ORDER DISMISSING DEFENDANT'S
COUNTERCLAIM FOR INEQUITABLE
CONDUCT- 8

B12 required to treat vitamin deficiency. (Dkt. No. 20 at 13.) Because Defendant does not allege

specific facts supporting an inference of materiality or intent to deceive, this allegation fails to

support a claim for inequitable conduct.

6. Example 2 in the Specification of the '496 Patent

Defendant next alleges that the inventors and their attorney presented Example 2 in the

specification of the '496 Patent in a misleading way because they failed to disclose that the

referenced study was conducted mostly in Germany by others who were not inventors, and that

the active components of the injections used in that study were essentially the same as a

commercial product previously available. (Dkt. No. 8 at 28-29.) However, Defendant again fails

to allege facts suggesting any deliberate intent to deceive the PTO. Exergen, 575 F.3d at 1329.

Rather than showing deliberate intent to decieve, the deposition testimony cited by Defendant

supports the opposite inference: Allen did not disclose the commercial availability of the product

because he did not think it was relevant to the oral preparation that was the subject of the '496

Patent. (Dkt. No. 20 at 13-14.) This allegation does not contain sufficient facts to support a claim

for inequitable conduct.

7. Statements During Prosecution of Prior Patents

Defendant next alleges that the inventors or their attorney failed to disclose prior art

during the prosecution of two patents in the ancestry of the '496 Patent: U.S. Patent Nos.

5,795,873 and 6,297,224. However, Defendant does not allege any basis for considering these

patents in the current case. (Dkt. No. 8 at 29-31.) Rather, Plaintiffs suggest that Defendant "may

have just missed the fact that these two additional patents, which are not at issue in this lawsuit,

were at issue in the prior litigation from which [Defendant] simply copied these allegations."

(Dkt. No. 20 at 14.) This appears to be the case, because Defendant does not address these

patents at all in its opposition to the current motion. (Dkt. No. 21; Dkt. No. 22 at 8.) In the

1   absence of any showing of why these patents are relevant, Defendant's allegations regarding

2   these patents fail to support a claim for inequitable conduct.

3       8.  <u>Statements During Prosecution of '496 Patent</u>

4         Defendant next alleges that the inventors filed a Disclosure Statement with an Election

5   and Amendment during the prosecution of the '496 Patent that contained misrepresentations

6   made to the examiner in prior negotiations. (Dkt. No. 8 at 33-34.) Defendant asserts that these

7   filings included "previously presented arguments . . . in addition to the Examiner's

8   Amendments/Reasons for Allowance in the '496 Patent." (<u>Id.</u> at 33.) Defendant also asserts that

9   the Examiner relied upon these representations. (<u>Id.</u> at 34.)

10        However, Defendant does not identify with any degree of specificity the content of these

11  misrepresentations, nor who made them. (Dkt. No. 8 at 33-34.) While Defendant's opposition to

12  the present motion contains some additional detail—stating, for example, that the statements

13  related to the prior art allegedly teaching away from the combinations of vitamins claimed in the

14  '496 Patent—a party cannot correct deficiencies in a pleading through statements made in

15  motion papers. <u>See, e.g.</u>, <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998).

16  Defendant's claims regarding statements made during prosecution of the '496 Patent are

17  insufficient to support a claim for inequitable conduct.

18      9.  <u>Statements Regarding Motivation to Combine</u>

19        Defendant next alleges that the inventors and their attorney knew that a statement made

20  in an Information Disclosure Statement that "there was no motivation for the combination of the

21  present invention, containing both folate and B12 or all three of folate, B12 and B6" was false as

22  of Aug. 5, 1993. (Dkt. No. 8 at 35.) However, while Defendant alleges intent to deceive on a

23  general level, it offers no facts supporting an inference that the inventors intended to deceive the

24  PTO. (<u>Id.</u>) Defendant also fails to explain why this information is material, especially given the

1  very small amount of vitamin B12 in the prior formulation at issue. (Dkt. No. 20 at 15.)

2  Therefore, this allegation fails to support a claim for inequitable conduct.

3      10. <u>Failure to Disclose Medivitan</u>

4          Defendant next alleges that the inventors and their attorney failed to disclose to the PTO

5  that the '496 Patent is based in large part on data from an injectable product called Medivitan,

6  which contained a similar combination of compounds. (Dkt. No. 8 at 36-38.) Defendant alleges

7  that "Allen was aware that such a compositionally similar injectable formulation provided the

8  basis for the supporting data for the claimed oral formulations and their use in the '496 Patent."

9  (<u>Id.</u> at 37.) However, the portion of the Allen testimony which Defendant cites to support this

10  allegation does not mention Medivitan. (<u>Id.</u>) Defendant also offers no facts that support an

11  inference that Allen had a specific intent to deceive the PTO. (<u>Id.</u>) In fact, Plaintiffs' assertion

12  that disclosure of Medivitan would have been cumulative in light of the '083 Patent, which was

13  disclosed to the PTO, seems a more reasonable explanation for why the information was not

14  disclosed. (Dkt. No. 20 at 16.) Defendant's claim regarding Medivitan is insufficient to support a

15  claim for inequitable conduct.

16      11. <u>Failure to Disclose Oral Preparations in the '496 Patent Specification</u>

17          Finally, Defendant alleges that the inventors engaged in inequitable conduct because they

18  "were aware that there were no oral preparations used at any location in the patent application

19  leading to the granting of the '496 Patent." (Dkt. No. 8 at 38.) However, Defendant offers no

20  details explaining why failing to discuss oral preparations in the specification of the '496 Patent

21  would be material. (<u>Id.</u>) The deposition testimony cited by Defendant actually supports the

22  opposite conclusion: While B6, B12, and folic deficiencies had been treated with pills for many

23  years, no one had yet developed an oral formulation encompassing all three vitamins. (Dkt. No.

24  8-3 at 29-30.) Defendant offers no facts to support a finding that disclosing the oral preparation

1   of these compounds would have had a material impact on the PTO's approval of the '496 Patent.

2   Therasense, 649 F.3d at 1291. Therefore, this allegation does not support a claim for inequitable

3   conduct.

4                                    **Conclusion**

5          Because all eleven examples of misrepresentations or omissions offered by Defendant

6   fail to meet the level of specificity and materiality required by Federal Rule 9(b), as well as

7   Exergen and Therasense, Defendant's counterclaim for inequitable conduct is DISMISSED.

8          The clerk is ordered to provide copies of this order to all counsel.

9          Dated this 8th day of August, 2012.

10

11

12
                                    Marsha J. Pechman
13                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

ORDER DISMISSING DEFENDANT'S
COUNTERCLAIM FOR INEQUITABLE
CONDUCT- 12